**UNITED STATES of America, Appellant,**

**v.**

**Antonio FLORES, Defendant-Appellee.**

**No. 1219, Docket 76–1195.**

United States Court of Appeals,
Second Circuit.

Argued June 18, 1976.

Decided July 9, 1976.

Stuart R. Shaw, New York City, for defendant-appellee.

John P. Flannery, II, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, Frederick T. Davis, Lawrence B. Pedowitz, Asst. U. S. Attys., New York City, of counsel), for appellant.

Before MANSFIELD, OAKES and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

Upon this appeal by the government pursuant to Title 18 U.S.C. § 3731[1] from a pretrial ruling of Judge Bonsal of the United States District Court for the Southern District of New York barring the introduction into evidence of certain proof which the government proposes to offer at trial against the defendant-appellee, a fugitive who has been extradited from Spain to the United States, the central issue is whether admission of the evidence is precluded by the terms of an order of the High Court of Spain extraditing the defendant to this country. We hold that it is not precluded and reverse the district court's ruling.

The case grows out of appellee's alleged participation in a major international narcotics conspiracy that has already spawned considerable litigation before this court.[2] On January 8, 1973, Antonio Flores, along with several others, was indicted in the United States District Court, Southern Dis-

---

1. 18 U.S.C. § 3731 provides in pertinent part: "An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy . . . ."

2. See, e. g., *United States v. Santana*, 503 F.2d 710 (2d Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974); *United States v. Hysohion*, 439 F.2d 274 (2d Cir. 1971).

trict of New York, for conspiracy to sell narcotics in violation of 21 U.S.C. §§ 173 and 174. The indictment charged Flores with participation in the alleged conspiracy from on or about January 1, 1968, through April 30, 1971, in furtherance of which 11 overt acts were committed, all but two prior to September 3, 1970. At that time he was a fugitive from this jurisdiction, residing in Spain. Spanish authorities arrested appellee on March 23, 1973, pursuant to an American extradition request. Flores, however, resisted extradition and the resulting legal proceedings lasted until November 13, 1973. On that date the High Court of Spain ruled that Flores should be extradited.

In ordering extradition, however, the Spanish Court noted that the United States and Spain had not entered into an extradition treaty encompassing narcotics smuggling until September 3, 1970, when Spain joined the Geneva Convention of 1936 for the Suppression of Illicit Traffic in Dangerous Drugs. Accordingly, the Spanish Court qualified Flores' extradition as follows:

> "If it is concluded from the foregoing that the Treaty of 1904 is applicable, it is also concluded that some limitations must be clearly stated, owing to the charge that the fugitive conspired with other persons to receive, conceal, buy, sell, or facilitate the transport to the United States of an undetermined quantity of heroin or other drugs during the approximate period of January 1968 to April 30, 1971, as evidenced by several acts commited [sic] by Antonio Flores himself or his co-conspirators; and it is concluded from the foregoing that the request for extradition must be totally rejected with respect to the charges brought against him before the United States District Court for the Eastern District [of New York] because they only include acts committed between January and August 1968, that is, outside the effectiveness of the Treaty of 1904 taken in conjunction with the aforesaid Convention; and with respect to the charges brought against him before the Court of the Southern District of New York, the extradition

must be granted, but expressly limited to activities from September 3, 1970 to April 30, 1971, all previous activities being excluded; . . . .

\* \* \* \* \* \*

"THEREFORE: In view of the articles and provisions cited and others which are applicable, *the Court hereby rules*:

"1. The extradition of Antonio Flores; also known as Antonio-Javier Flores Serrano, who uses the name of Louis Serrano Flores as well, a United States citizen born in Caguas, Puerto Rico, in 1937, is admissible, and his extradition is granted, at the request of the United States of America, limited solely and exclusively to the alleged crime of conspiracy to violate Sections 173 and 174 of Title 21 of the United States Code, of which crime he is accused before the Court of the Southern District of New York, and further expressly limited with respect to time to the acts committed between September 3, 1970 and April 30, 1971, excluding any previous or subsequent acts. . . . [A]nd it is understood that the extradition is contingent upon the formal promise of the United States Government that the aforesaid person will not be prosecuted for previous offenses or offenses foreign to this extradition request unless he expressly consents to such prosecution."

In line with this restriction, the Spanish Court forbade prosecution of Flores upon an indictment pending in the Eastern District of New York charging him with conspiring between January 1 and August 31, 1968, to violate the federal narcotics laws. In a formal note from the United States Embassy to the Spanish Government the American authorities promised that

> "Antonio Flores will not be prosecuted . . . for prior infractions or infractions different than those which are concretely referred to by the decision portion of the dictated decree. . . ."

Since Flores then was serving a Spanish prison sentence, his actual delivery to the Southern District of New York was delayed

until February 14, 1976. In a pretrial hearing held on February 26, Flores, in reliance on the Spanish decree, moved that the United States be precluded from introducing any evidence concerning the "[a]cts and declarations of the defendant and conspirators made prior to September 3, 1970, or after April 30, 1971. . . ." In response, however, the Government argued that

> "[a]t trial all of evidence of the defendant's conspiratorial behavior [should be] admissible against him subject only to the limitation that the jury must find that all the necessary elements of the crime charged existed sometime during the period September 3, 1970 to April 30, 1971."

On March 24, 1976, Judge Bonsal decided, and the government readily conceded, that the prosecution must establish that "the conspiracy charged in the indictment was in existence between September 3, 1970 and April 30, 1971 and that the defendant was a member of it during this period." The district court, citing *United States v. Papadakis,* 510 F.2d 287 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975), further held that the government may introduce evidence of Flores' prior acts and statements as "relevant to defendant's knowledge and intent with respect" to the post September 3, 1970, conspiracy. However, in pretrial conferences held on April 13, 19 and 22 the court construed the Spanish High Court's extradition order as precluding the introduction of evidence of prior acts and statements of defendant's co-conspirators. Although Judge Bonsal did not specify the precise terms of the Spanish Court's order, he apparently relied upon statements in the order that extradition was limited "to the acts committed between September 3, 1970, and April 30, 1971, excluding any previous or subsequent acts." However, he forthrightly observed that others might reasonably differ as to his interpretation of this and similar language in the order, which led him to suggest on several occasions that the government might seek our view through this interlocutory appeal.

In accordance with his interpretation of the treaty and order Judge Bonsal instructed the prosecution that its witnesses would be restricted to testifying "when they first ran into Flores . . ., how long they had known Flores and . . . what Flores told them to do," but that other prior acts in furtherance of the conspiracy would be excluded. While acknowledging that such evidentiary restrictions differ from the practice in "the ordinary case," the court felt itself bound by its reading of the Spanish decree and invited the government to seek review in this court. The government thereupon filed its notice of appeal and trial has been stayed accordingly.

## DISCUSSION

### Jurisdiction

■ Despite the language of 18 U.S.C. § 3731 authorizing the government to appeal from district court orders "suppressing or excluding evidence" and decisions by this court holding that the statute permits an immediate appeal from pretrial orders excluding prospective trial testimony of government witnesses, see, e.g., *United States v. Cannone,* 528 F.2d 296 (2d Cir. 1975); *United States v. Percevault,* 490 F.2d 126 (2d Cir.1974), defendant-appellee contends that the present appeal should be dismissed. First he argues that the appeal is time barred by § 3731, which requires that an appeal "in all such cases . . . be taken within thirty days after the decision, judgment or order has been rendered," since the government did not file its notice of appeal until May 5, 1976, which was more than 30 days after March 24, 1976, the date when Judge Bonsal, in response to the defendant's motion to limit the government's introduction of evidence at trial, ruled in favor of the government, holding that it might introduce evidence of Flores' prior acts. From this appellee apparently assumes that the district court by implication must, at the same time, have granted Flores' concurrent motion that the government be forbidden from introducing the prior acts of his co-conspirators at trial. If so, this assumption is unfounded and finds

no support in Judge Bonsal's March 24th order. Indeed it was not until the mid-April pretrial conferences that the court orally ruled that it would exclude evidence of the prior acts and statements of Flores' co-conspirators. In this context, the government's good faith appeal, well within 30 days of the oral rulings, amply satisfies the time limits imposed by § 3731.[3]

■ Nor can we accept appellee's contention that Judge Bonsal's rulings did not constitute a suppression or exclusion of evidence within the meaning of § 3731 but instead "involved an order delineating the permissible scope of acts for which the Appellee, Flores, could be prosecuted." Brief at 10. The government, conceding that the permissible scope of such acts is restricted to the crime of conspiracy committed after September 3, 1970, seeks to introduce evidence of conduct prior to that date as proof of the existence of the conspiracy during the later period. The district court's orders, therefore, necessarily constitute evidentiary rulings that determine the manner in which such a crime may be proven. Section 3731 expressly affords jurisdiction in such an instance.

*The Merits*

Turning to the merits, Flores' contention, which was accepted in part by the court below, is relatively simple. He argues that, since the Spanish High Court's order expressly limits the extradition to "acts" or "activities" postdating September 3, 1970, and excludes any and all "previous activities" or "previous acts" the government is precluded from offering evidence of such previous acts, whether committed by Flores or by his alleged co-conspirators. Although the quoted language literally supports this argument, it fails to distinguish between the *crimes* for which Flores may be charged and tried—all the elements of which concededly must fall between the dates fixed by the Spanish tribunal—and the *evidence*

that might be introduced to illuminate and establish the crimes charged. Relying on this distinction the government argues that while the Spanish order bars prosecution of Flores for acts committed prior to September 3, 1970, it does not preclude the introduction of earlier conduct that is relevant to and probative of Flores' alleged participation in a criminal conspiracy after September 3. To construe the Spanish decree as excluding such proof, the government argues, would violate basic principles of international law that preclude an asylum state such as Spain from delimiting the evidentiary rules of the requisitioning state.

■ Turning first to the validity of the basic premise underlying the government's argument, it is clear that under our own law a legal distinction exists between the permissible scope of triable offenses, on the one hand, and the evidence that may be used at trial to prove such offenses, on the other. As a result, although prosecution of an earlier offense may be barred, it has long been established that evidence of that offense may nevertheless be introduced to prove a later crime which the government is permitted to prosecute. For example, although prior conspiratorial conduct may be insulated from prosecution by a statute of limitations, the government nevertheless is entitled to introduce evidence of such prior conduct as long as the conspiracy subject to trial has continued into the permissible prosecutable period and an overt act in furtherance of the conspiracy has been committed during that period. See *Grunewald v. United States,* 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *United States v. Borelli,* 336 F.2d 376, 385 (2d Cir. 1964), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). Similarly, although our Constitution's *ex post facto* clause prohibits prosecution for an act that was not a criminal offense when committed, *Calder v. Bull,* 3 U.S. (3 Dall.) 385, 390, 1 L.Ed. 648 (1798); *Ex parte Garland,* 71

---

**3.** We do not mean to imply that any comment by a trial judge during a pretrial hearing, stating in advance what evidence he believes he will exclude, will make his statement a "deci-

sion" for purposes of § 3731. In this case Judge Bonsal, by clearly stating his desire that the government appeal to this court, made it clear that he was making a "decision."

U.S. (4 Wall.) 333, 377, 18 L.Ed. 366 (1866), the government in a conspiracy prosecution may introduce evidence of acts antedating the enactment of a criminal statute as "bearing on the existence and purpose of the conspiracy and the significance of later behavior," *United States v. Fino*, 478 F.2d 35, 38 (2d Cir.1973), cert. denied, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974), and "to show the existence and purpose of the conspiracy, as well as to prove the intent and purpose of the conspirators' later acts," *United States v. Ferrara*, 458 F.2d 868, 874 (2d Cir.) cert. denied, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972). See *United States v. Smith*, 464 F.2d 1129, 1133 (2d Cir.), cert. denied, 409 U.S. 1023, 93 S. Ct. 462, 34 L.Ed.2d 314 (1972); *United States v. Binder*, 453 F.2d 805, 808 (2d Cir.1971), cert. denied, 407 U.S. 920, 92 S.Ct. 2458, 32 L.Ed.2d 805 (1972).

These authorities provide persuasive support for the distinction relied upon by the government. Certainly the constitutionally grounded interests protected by the *ex post facto* clause of Article I, § 10, and the legislative policies underlying the creation of statutes of limitation merit judicial protection as weighty as that claimed by Flores under the international law doctrine of specialty. Consequently, unless it is unequivocally clear that Spain was authorized under principles of international law and intended to limit the manner by which United States prosecutors might try a conspiracy case, we would feel constrained to follow domestic evidentiary rules. Indeed Judge Bonsal appears to have done so by ruling that Flores' own prior acts and statements would be admitted to prove his later intent and purpose in participating in the alleged conspiracy. This leaves only the question of whether the Spanish extradition order or other controlling international authority must be construed as forbidding the application of the prevailing evidentiary rules of the United States forum in the trial of Antonio Flores.

█ The international doctrine of specialty, upon which Flores relies, cannot provide him with support, since that doctrine does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state. Instead, the doctrine has more modest roots. In *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), the Supreme Court established as a judicially enforceable principle of our domestic law that an extradited defendant may not be charged and tried for crimes not enumerated in the applicable extradition treaty. See also *Valentine v. United States ex rel. Neidecker,* 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936); *Factor v. Laubenheimer,* 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933). This later was carried further to provide that even if the treaty specifies crimes for which the defendant may be criminally responsible, prosecution for such offenses will be barred if the asylum state did not grant extradition for such crimes. *Johnson v. Browne,* 205 U.S. 309, 27 S.Ct. 539, 51 L.Ed. 816 (1907). Consequently, in modern times most of our attention has been directed to deciding whether certain offenses which the government seeks to prosecute fall outside the contemplated scope of the foreign sovereign's extradition decree. See, e.g., *Shapiro v. Ferrandina,* 478 F.2d 894, 905–08 (2d Cir.1973); *Fiocconi v. Attorney General,* 462 F.2d 475 (2d Cir.), *cert denied,* 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972); *United States v. Paroutian,* 299 F.2d 486 (2d Cir.1962). It is clear, however, that even as the specialty doctrine has been defined and broadened in this century, it has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to "try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." Friedmann, Lissitzyn & Pugh; International Law 493 (1969). Where, as here, a defendant is indicted and tried for the precise offense contained in the foreign extradition order (a criminal conspiracy during the period from September 3, 1970, to April 30, 1971), the doctrine does not

authorize us to disregard normal evidentiary rules followed by this forum.

■ Nor do we read the Spanish High Court's ruling as attempting a departure from the normal rule of international comity by seeking to impose restrictions on the evidentiary or procedural rules of the district court. See *Neely v. Henkel,* 180 U.S. 109, 123, 21 S.Ct. 302, 45 L.Ed. 448 (1901); *Cf. United States ex rel. Bloomfield v. Gengler,* 507 F.2d 925, 928–29 (2d Cir.1974); *Gallina v. Fraser,* 278 F.2d 77, 78 (2d Cir.), *cert. denied,* 364 U.S. 851, 5 L.Ed.2d 74 (1960). While the language of its ruling excluding "any previous or subsequent act" is not free from ambiguity, the totality of circumstances leads us to conclude that the Spanish Court simply meant, as expressly provided later in its opinion, that the United States Government may not prosecute Flores "for previous offenses or offenses foreign to this extradition request. . ."
This interpretation conforms with the State Department's apparent understanding, for in its verbal note of assurances to Spain, the United States Embassy guaranteed that "Antonio Flores will not be prosecuted . . . for prior infractions or infractions different than those which are concretely referred to by the [Spanish] decision. . . ." Since Flores is being prosecuted solely for a crime allegedly committed during the period from September 3, 1970, to April 30, 1971, this commitment is not being violated.

Moreover, our construction of the Spanish decree is fortified by the specific language of the Geneva Convention upon which the Spanish Court expressly grounded extradition. Thus, Article 15 of the Convention provides:

"The present Convention does not affect the principle that offenses referred to in Article 2 and 5 [including narcotics conspiracy] shall in each country *be defined, prosecuted and punished in conformity with the general rules of its domestic law.*" (Emphasis supplied).

Even more on point, Article 13 insures that:

"Nothing in the present Article shall be construed as an undertaking on the part of the High Contracting Parties to adopt in criminal matters *any form or methods of proof contrary to their laws. . .*"
(Emphasis supplied).

We are not persuaded that the Spanish judges, in extraditing Flores pursuant to the Geneva Convention, intended to violate two of its central proscriptions.[4]

We conclude, therefore, that the normal procedural and evidentiary rules of our domestic courts continue to control Flores' prosecution and that, subject to proper jury instructions, the relevant pre-September 3rd acts and statements of both Flores and his alleged co-conspirators are therefore admissible to the extent that they may demonstrate the existence of a conspiracy continuing into the date limits fixed by the Spanish Court and establish the intent and purposes of the conspirators during that period.[5]

Reversed.

---

4. Appellee seeks to bolster this suggestion by presenting two letters from the Spanish Counsul General in New York, both addressed "To Whom It May Concern" and sent "[a]t the request of" Flores' wife, which appellee labels formal notes of protest to the action of the government in seeking to broaden its proof against Flores. We do not find these letters to be persuasive, let alone compelling, evidence of Spain's official displeasure. Cf. *Fiocconni v. Attorney General, supra.* The government at oral argument labelled these communiques as unofficial letters prompted by Flores' family and denied that the State Department has received formal notes of protest from Spanish authorities. We are inclined to accept this representation by the government in deciding whether these documents are official intergovernmental communiques.

5. We have no doubt that in his instructions to the jury the able trial judge will, to the extent required, clearly advise the jury of the significance of the distinction between evidence of any earlier conspiracy and the offense charged against Flores. See, e.g., *United States v. Fino,* 478 F.2d 35, 38 (2d Cir.1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974); *United States v. Smith,* 464 F.2d 1129, 1133 (2d Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972); *United States v. Binder,* 453 F.2d 805, 808 (2d Cir.1971), *cert. denied,* 407 U.S. 920, 792 S.Ct. 2458, 32 L.Ed.2d 805 (1972).