John Kenneth LEIGHNOR, Jr., Appellant,

v.

C.A. TURNER, Warden, Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.

No. 88–2096.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1989.

Decided Sept. 5, 1989.

As Amended Oct. 11, 1989.

Alan Ellis and Peter Goldberger, for appellant.

Michael A. Jones, Springfield, Mo., for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LARSON,[*] Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

John Kenneth Leighnor, Jr. filed a petition for a writ of habeas corpus alleging that the United States Parole Commission's enhancement of his parole guideline range on the basis of his escape from federal prison and use of a false passport violated the rule of specialty contained in the treaty pursuant to which he was extradited. The district court[1] dismissed Leighnor's petition and we now affirm.

## I. BACKGROUND

In September 1985 Leighnor was sentenced in the United States District Court for the Northern District of Texas to serve an aggregate ten-year sentence after he plead guilty to mail fraud. The following November Leighnor escaped from the federal prison camp where he was serving his sentence and fled to the Federal Republic of Germany. While on escape status, Leighnor was indicted in the United States District Court for the District of Kansas for another mail fraud charge and was also indicted for his escape from federal prison in the United States District Court for the Western District of Oklahoma.

The United States requested Leighnor's extradition from West Germany pursuant to an extradition treaty it had with West Germany that became effective on August 29, 1980. *See* Treaty Concerning Extradition, June 20, 1978, United States–Federal Republic of Germany, 32 U.S.T. 1485, T.I.A.S. No. 9785 [hereinafter "Treaty"]. In its extradition request the United States claimed that Leighnor was wanted: "(1) to serve the remainder of a sentence for a federal fraud conviction in one jurisdiction, and (2) to stand trial on federal fraud charges in another jurisdiction." Joint Appendix at 19a. The Federal Republic of Germany granted Leighnor's extradition on those two grounds.

Leighnor was thus returned to American custody and a detention hearing was held on February 17, 1987. In that hearing a magistrate ordered that Leighnor be detained pending trial. A second detention hearing was held on February 23, 1987, at which time the magistrate found Leighnor to be a serious flight risk and ordered his

---

[*] The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

continued detention. Leighnor remained in detention until June 26, 1987, when the complaint against him for escape was dismissed upon the government's motion.

In September 1987 Leighnor was sentenced in the United States District Court for the District of Kansas to two years imprisonment following his plea of guilty to the two counts of mail fraud with which he was charged while on escape status. That sentence was deemed to run concurrently with the ten-year sentence he was serving when he escaped.

Leighnor then petitioned *pro se* for a writ of habeas corpus under 28 U.S.C. § 2241. As originally stated, Leighnor's petition complained that his post-extradition detention was unlawful because the magistrate considered his escape in ordering the detention even though the escape was not a basis for his extradition. Leighnor claimed that this violated the rule of specialty which is contained in Article 22 of the Treaty and generally provides that in extradition cases the requesting nation may not try or punish the extraditee for any offense that occurred prior to extradition other than that for which the surrendering nation agreed to extradite. Leighnor submitted in his petition that because of this breach of the Treaty the United States had lost personal jurisdiction over him and was obligated to allow him to return to West Germany.

While his habeas corpus petition was pending in the district court, the United States Parole Commission informed Leighnor that his parole release guideline range of 26–34 months was being increased to 46–66 months in order to take into account "new criminal behavior"—namely, his escape from federal prison and his use of a false passport in the course of that escape. Leighnor, now represented by appointed counsel, amended his habeas petition to allege that the Parole Commission's reliance on his escape and use of a false passport to increase his parole guideline range also violated the rule of specialty

because those offenses occurred prior to his arrest in West Germany and were not the basis for his extradition.

The district court, adopting the magistrate's [2] report and recommendation, dismissed Leighnor's petition. The district court ruled that

> [t]he Magistrate correctly concluded that [Leighnor] was not 'proceeded against,' 'sentenced,' or 'detained' within the meaning of the Treaty. Further, [Leighnor's] contention that his sentence has been enhanced as surely as if he had been convicted is without merit. Utilizing the circumstances of conduct for which [Leighnor] was not charged to go above [his] guideline range was a proper exercise of the Parole Commission's discretion.

*Leighnor v. Turner,* No. 88–3068, slip op. at 1–2 (W.D. Mo. May 20, 1988) (citation omitted).

In this appeal, Leighnor contests only the Parole Commission's reliance on his escape and use of a false passport to enhance his parole guideline range. He no longer challenges his detention between the time of his return to the United States and the time of the dismissal of the escape charge because when he was sentenced for his second mail fraud conviction the sentencing judge granted him credit for the time he spent in confinement after his extradition.

We conclude that the Parole Commission's consideration of Leighnor's escape and use of a false passport did not violate the specialty doctrine and thus affirm the district court's judgment.

## II. DISCUSSION

### A. *Exhaustion*

■ Initially, we note that when Leighnor filed his habeas petition in the district court he had not exhausted his administrative remedies in that he had not appealed the Parole Commission's decision to the Commission's National Appeals Board pursuant to 28 C.F.R. § 2.26. Thus, the dis-

---

**2.** The Honorable James C. England, United States Magistrate for the Western District of Missouri.

trict court entertained Leighnor's claim prematurely. *See Merki v. Sullivan,* 853 F.2d 599, 600–01 (8th Cir.1988) (finding federal prisoner's challenge to Parole Commission decision premature due to prisoner's failure to appeal to National Appeals Board); *Willis v. Ciccone,* 506 F.2d 1011, 1014–15 (8th Cir.1974) (holding that federal prisoners challenging the actions of prison authorities or prison conditions must exhaust available administrative remedies before seeking habeas relief).

However, after the district court entered its judgment, Leighnor did appeal the Parole Commission's decision to the National Appeals Board. The Board rejected Leighnor's claim that the Parole Commission's consideration of his escape and use of a false passport violated the rule of specialty.[3] Because Leighnor has now exhausted his administrative remedies the district court's error has been cured and we need not dismiss the appeal on exhaustion grounds. *Accord Arias v. United States Parole Comm'n,* 648 F.2d 196, 199 (3d Cir.1981) (holding that because prisoner exhausted remedies after district court's judgment "the prematurity of the district court's action is no longer of any significance") (citation omitted).

### B. *Standing*

■ We now turn to the government's assertion that Leighnor lacks standing to challenge a violation of the rule of specialty. There exists disagreement among the circuits on the question of individuals'

standing to assert breaches of the specialty principle.[4] This court addressed the issue in *United States v. Thirion,* 813 F.2d 146 (8th Cir.1987), and rejected as "without merit" the argument that an extradited individual lacks standing to challenge a violation of an extradition treaty. *Id.* at 151 n. 5 (citation omitted). The panel in *Thirion* held that an extradited individual "may raise whatever objections to his prosecution that [the surrendering country] might have." *Id.* at 151. We are bound to follow *Thirion* on this point and thus reject the government's claim that Leighnor lacks standing to assert a violation of the specialty principle. We note, however, that in light of the genuine debate surrounding this important issue it is one which arguably merits consideration by this court sitting *en banc.*

### C. *Rule of Specialty*

■ The thrust of this case is Leighnor's claim that the Parole Commission's reliance on his escape and use of a false passport to increase his parole guideline range was a violation of the rule of specialty stated in Article 22 of the Treaty. That Article provides in pertinent part:

(1) A person who has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for any offense committed prior to his surrender other than that for which he was extradited, nor shall he be for any other reason restricted in his

---

**3.** Pursuant to Federal Rule of Appellate Procedure 10(e) the parties agreed to include the National Appeals Board's decision as part of the record on appeal. *See* Exhibit 4.

**4.** *Compare United States v. Kaufman,* 874 F.2d 242, 243 (5th Cir.1989) (per curiam) (denial of petition for rehearing and suggestion for rehearing en banc) (stating that only a nation that is a party to a treaty may complain of a breach of the treaty) *and Demjanjuk v. Petrovsky,* 776 F.2d 571, 584 (6th Cir.1985) (stating that "[t]he right to insist on application of the principle of specialty belongs to the requested state, not to the individual whose extradition is requested") (citation omitted), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986) *and Shapiro v. Ferrandina,* 478 F.2d 894, 906 (2d Cir.) (stating that "the principle of specialty has been viewed

as a privilege of the asylum state * * * rather than a right accruing to the accused") (citations omitted), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973) *with United States v. Diwan,* 864 F.2d 715, 721 (11th Cir.) (stating that "[t]he extradited individual * * * can raise only those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty") (citations omitted), *cert. denied,* — U.S. —, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989) *and United States v. Cuevas,* 847 F.2d 1417, 1426 (9th Cir.1988) (stating that "[a] person extradited may raise whatever objections the extraditing country would have been entitled to raise") (citation omitted), *cert. denied,* — U.S. —, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989).

personal freedom, except in the following cases:

a) When the State which extradited him consents thereto.

\* \* \* \* \* \*

b) When such person, having had the opportunity to leave the territory of the State to which he has been surrendered, has not done so within 45 days of his final discharge or has returned to that territory after leaving it.

Treaty Concerning Extradition, June 20, 1978, United States–Federal Republic of Germany, 32 U.S.T. 1485, 1505–06, T.I.A.S. No. 9785.

The rule of specialty is based on principles of international comity and is designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government. *See United States v. Thirion,* 813 F.2d at 151, 153. The extraditee's standing to assert the specialty principle is only derivative; the extraditee may object only to breaches to which the surrendering country would have been entitled to object. *See United States v. Diwan,* 864 F.2d at 721; *United States v. Van Cauwenberghe,* 827 F.2d 424, 428 (9th Cir. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). Thus, in addressing Leighnor's claim that the Parole Commission violated the rule of specialty, we must focus on the question of whether the Federal Republic of Germany would consider the Commission's action to be a breach of the specialty principle. *See United States v. Jetter,* 722 F.2d 371, 373 (8th Cir.1983) (per curiam).

The government argues that the Federal Republic of Germany would not object to the Parole Commission's action in this case because (1) the specialty principle generally applies only to prosecutions against the extradited individual, (2) the Federal Re-

public of Germany indicated when it granted extradition that it contemplated that the United States would detain Leighnor because of his prior escape, and (3) the Federal Republic of Germany has not voiced any objection to the Parole Commission's action. On the other hand, Leighnor argues that the specialty principle in Article 22 of the Treaty is stated in sufficiently broad language to include a guarantee that the requesting government will not extend the extradited individual's time in confinement on the basis of an offense that was not a subject of the extradition order. In this regard, Leighnor emphasizes the Treaty's language that an extradited individual "shall not be *proceeded against,* sentenced or *detained* with a view to carrying out a senterce or detention order \* \* \*, *nor shall he be for any other reason restricted in his personal freedom* \* \* \* \* " (emphasis added). We find Leighnor's argument to be unpersuasive and hold that the rule of specialty was not violated in this case.

This court faced an analogous situation in *United States v. Thirion,* 813 F.2d 146. In that case, the defendant had been extradited from Monaco to stand trial for several criminal charges, not including conspiracy. The extradition treaty between the United States and Monaco contained a specialty principle similar to that in the Treaty in the instant case.[5] At trial, the government sought to establish the defendant's involvement in a conspiracy in order to prove his guilt of the crimes for which he was extradited. The defendant argued that the specialty doctrine barred the admission of evidence relevant to the conspiracy because conspiracy was not a basis for his extradition. This court rejected that argument, noting that the specialty principle generally prohibits "indiscriminate *prosecution* by the receiving government" and is not so broad as to intrude upon the

---

5. The extradition treaty in *Thirion* provided:

No person surrendered ... shall be prosecuted, judged or punished for any crime or offense committed prior to his extradition, other than the offense for which his surrender was accorded, and no person shall be arrested or detained by civil process for a cause prior to the extradition, unless, in either case, he

has been at liberty for one month to leave the country, after having been tried, or, in case of conviction, after having either served his sentence or obtained pardon.

*United States v. Thirion,* 813 F.2d at 151 (quoting Treaty Respecting Extradition, Feb. 15, 1939, United States—Monaco, 54 Stat. 1780, 1786, T.S. No. 959).

evidentiary or procedural rules of the receiving state. *Id.* at 153 (emphasis added) (quoting *Fiocconi v. Attorney General,* 462 F.2d 475, 481 (2d Cir.), *cert. denied,* 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972)).

Despite the obvious factual differences between *Thirion* and the instant case, we consider the reasoning employed in *Thirion* to be instructive here. In *Thirion* we allowed evidence of a pre-extradition offense which was not the basis for extradition to be used as evidence against an extradited defendant, reasoning that the specialty doctrine was not violated since the defendant was tried only for the crimes for which he was actually extradited. *United States v. Thirion,* 813 F.2d at 153. In the instant case, Leighnor does not dispute that he was tried only for the crimes that were the subject of his extradition. We do not believe that the rule of specialty as stated in Article 22 of the Treaty was intended to preclude the receiving government from taking any pre-extradition conduct into account when making parole decisions, just as the comparable provision of the treaty in *Thirion* was found not to intrude upon the receiving government's evidentiary rules. Undoubtedly, in both *Thirion* and the instant case, the receiving government's use of the pre-extradition offense affected the defendant's sentence. But we do not believe that the rule of specialty is violated by virtue of that fact alone. The rule as stated in Article 22 of the Treaty is a typical expression of the specialty doctrine. And, the doctrine is generally understood to prohibit indiscriminate *prosecution* of extradited individuals rather than to prohibit the receiving state's consideration of pre-extradition offenses while prosecuting the individual for crimes for which extradition was granted. Thus, we conclude that the Federal Republic of Germany would not object to the Parole Commission's action here and, consequently, Leighnor has no grounds to object.

■ We also note that in its correspondence with the United States prior to Leighnor's extradition, the Federal Republic of Germany indicated its awareness that Leighnor had escaped from prison and its understanding that he might be detained after extradition for that reason. In its extradition decision, the German court stated:

> There exists a risk of flight * * * * The accused did indeed evade execution of sentence in the United States of America. He fled his native country and took up domicile in the Federal Republic with the aid of forged identification papers. In the event of his being released from extradition detainment, there would be imminent risk that he should evade the desire for extradition expressed by his native government. This risk can be met effectively only by execution of extradition detainment.

Joint Appendix at 37a.

Further, the Federal Republic of Germany stated in its *verbal note:*

> It is intended to turn the fugitive over to American officials at the * * * airport in Frankfurt. It is particularly pointed out that in the opinion of the Koblenz General Public Prosecutor's Office there is an increased danger that the prisoner may attempt to escape or harm himself, and therefore special safeguards are advised.

*Id.* at 39a.

Thus, it appears that the Federal Republic of Germany contemplated that the United States would consider Leighnor's escape and use of a false passport in making detention decisions. This buttresses our conclusion that West Germany would have no objection to the Parole Commission's decision in this case.

## III. CONCLUSION

In sum, we hold that the rule of specialty was not violated in this case, and thus affirm the district court's denial of Leighnor's petition for a writ of habeas corpus.