# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

―――――――――

No. 09-1366

―――――――――

United States of America,

      Appellee,

v.

Dino Lomeli,

      Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*
\*

―――――――――

Submitted: November 18, 2009
Filed: February 25, 2010

―――――――――

Before WOLLMAN, RILEY, and SHEPHERD, Circuit Judges.

―――――――――

SHEPHERD, Circuit Judge.

In 2004, Dino Lomeli, a citizen of Mexico, was arrested in Mexico and extradited to the United States to stand trial for murder in Texas state court and conspiracy in the Northern District of Iowa. After pleading guilty to the Texas murder charge, Lomeli pled guilty to conspiracy to launder money and conspiracy to distribute 100 kilograms or more of marijuana and 500 grams or more of cocaine. The district court[1] sentenced Lomeli to 235 months imprisonment, to run consecutively to his Texas sentence. We affirm.

―――――――――――――――――

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I.

Lomeli was charged with the 1997 murder of Amy McKeever in Texas state court.  Additionally, Lomeli was charged in federal court with conspiring to transport marijuana and cocaine from Corpus Christi, Texas, to Cedar Rapids, Iowa, from 1994 to 1996.  Lomeli used his auto repair shop in Corpus Christi, Texas, to load automobiles with marijuana, which would then be driven to Cedar Rapids, Iowa, for distribution.  Drug proceeds would then be sent back to Lomeli via Western Union, couriers, and U.S. Postal Service money orders.

Before he could be arrested for the murder of McKeever or for the instant conspiracy charges, Lomeli fled to Mexico.  He remained in Mexico until 2004, when he was arrested and extradited to the United States pursuant to the extradition treaty between the United States and Mexico.  See Extradition Treaty between the United States of America and the United Mexican States, May 4, 1978, 31 U.S.T. 5059 ("the U.S.-Mexico Extradition Treaty" or "the treaty").

Lomeli pled guilty to the Texas murder charge and was sentenced to 30 years imprisonment.  While serving this sentence, Lomeli was arrested and transported to the Northern District of Iowa for trial on the instant conspiracy offenses.  In April 2008, Lomeli pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h), and conspiracy to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii), and 846.

Lomeli's Presentence Investigation Report (PSR) found him to have a base offense level of 30, coupled with a four-level increase for role in the offense and a three-level reduction for acceptance of responsibility.  This left Lomeli with an adjusted offense level of 31. Lomeli had a Category VI criminal history due to his Texas murder conviction as well as previous convictions for possession with intent

to distribute marijuana, possession of drug proceeds, driving while intoxicated, criminal mischief, causing bodily injury, and reckless driving.

Lomeli's advisory Guidelines sentencing range was 188-235 months imprisonment. At the sentencing hearing, the district court sentenced Lomeli to 235 months imprisonment on each count, to run concurrently with each other but consecutively to the undischarged portion of his 30-year Texas murder sentence. In sentencing Lomeli, the district court rejected the argument that it was violating the U.S.-Mexico Extradition Treaty by considering Lomeli's criminal history in determining his sentence. The district court also provided an alternative sentence:

> If the computation of the criminal history under the advisory guidelines is found to violate the Treaty of Extradition with Mexico, the Court would still impose the very same sentence after considering the statutory factors at 18 USC 3553(a), and for the same reasons that I have previously stated: Drug quantity, criminal history, his leadership role, the fact that this is his second conviction involving drug distribution, and the fact that I find that he is a dangerous and threatening person. So that's my alternate sentence. Both sentences, the one I'm going to impose today and the alternate sentence, are going to be at the top of the range.

(Sent. Hr'g Tr. 21:24-22:12.)

## II.

Lomeli appeals his sentence, arguing (1) that the doctrine of specialty contained in the U.S.-Mexico Extradition Treaty prohibits the court from taking into account his prior criminal history when sentencing him for the instant offenses, and (2) that the court erred in sentencing him to 235 months imprisonment on each count, and in ordering that these sentences be served consecutively to the undischarged portion of his 30-year Texas murder sentence. We address these issues in turn.

A.

We review questions of treaty interpretation and application de novo. See Smythe v. U.S. Parole Comm'n, 312 F.3d 383, 385 (8th Cir. 2002) (per curiam); see also Silverman v. Silverman, 338 F.3d 886, 904 (8th Cir. 2003) (en banc) (Heaney, J., dissenting) ("[T]he interpretation and application of treaty language is reviewed de novo . . . ."). When interpreting a treaty, "[t]he clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories.'" Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 180 (1982) (quoting Maximov v. United States, 373 U.S. 49, 54 (1963)). This circuit has held that extradited individuals such as Lomeli have standing to raise any objection that the surrendering country might have raised to their prosecution. See Leighnor v. Turner, 884 F.2d 385, 388 (8th Cir. 1989) (citing United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987).

Article 17 of the U.S.-Mexico Extradition Treaty states, in relevant part:

1.- A person extradited under the present Treaty shall not be *detained, tried or punished* in the territory of the requesting Party for an offense *other than that for which extradition has been granted* nor be extradited by that Party to a third State unless:
a) He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;
b) He has not left the territory of the requesting Party within 60 days after being free to do so; or
c) The requested Party has given its consent to his detention, trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

U.S.-Mexico Extradition Treaty, supra, 31 U.S.T. at 5071 (emphasis added). Article 17 is an explicit recitation of a general rule of extradition known as the doctrine of

-4-

specialty.[2]  In general, the doctrine of specialty provides that "a defendant may be tried only for the offense for which he was delivered up by the asylum country." Thirion, 813 F.2d at 151.  The doctrine dates back to the mid-1800s, but was first adopted by the Supreme Court in 1886.  See Jacques Semmelman, The Doctrine of Specialty in the Federal Courts: Making Sense of United States v. Rauscher, 34 Va. J. Int'l L. 71, 75, 80-85 (1993).  In United States v. Rauscher, the Court held:

> the weight of authority and of sound principle are in favor of the proposition that a person who has been brought within the jurisdiction of the court, by virtue of proceedings under an extradition treaty, can only be tried for one of the offenses described in that treaty, and for the offense with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from whose asylum he had been forcibly taken under those proceedings.

119 U.S. 407, 430 (1886).  The doctrine is now commonly included in many U.S. extradition treaties.  See Semmelman, supra, at 76 ("All extradition treaties entered into by the United States since Rauscher have contained a specialty clause."); see also Restatement (Third) of the Foreign Relations Law of the United States § 477 (1987) (stating that the doctrine is included "[u]nder most international agreements, state laws, and state practice").  It "is based on principles of international comity and is designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government."  Turner, 884 F.2d at 389 (citing Thirion, 813 F.2d at 151, 153); see also United States v.

---

[2]The phrases "doctrine of specialty" and "doctrine of speciality" are used interchangeably, see Jacques Semmelman, The Doctrine of Specialty in the Federal Courts: Making Sense of United States v. Rauscher, 34 Va. J. Int'l L. 71, 71 n.1 (1993), although "doctrine of specialty" is much more common.  See, e.g., Restatement (Third) of the Foreign Relations Law of the United States § 477 (1987).  Although Article 17 of the U.S.-Mexico Extradition Treaty is entitled the "Rule of Speciality," for consistency we shall refer to the "doctrine of specialty."

Lazarevich, 147 F.3d 1061, 1063 (9th Cir. 1998) ("The doctrine of specialty embodies the principle of international comity: to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States." (quotation omitted)).

Lomeli argues that the district court's use of his past criminal history in determining his sentence constitutes a "punish[ment] . . . for an offense other than that for which extradition has been granted," U.S.-Mexico Extradition Treaty, supra, 31 U.S.T. at 5071, and is thus a violation of the doctrine of specialty. Lomeli also cites portions of his extradition paperwork filed by the Mexican government, which provide:

> Section 10, Subparagraph II of the International Extradition Law demands the requesting country's commitments that crimes committed prior to the extradition, omitted in the complaint as well as crimes not connected with the one specified in such complaint, shall not be subject to the process, *not even as aggravating circumstances*, unless the Defendant consents freely to be judged for such . . . . This commitment is set forth in Section 17 of the Extradition Treaty between the United States of Mexico and the United States of America . . . .

(Appellant's Br. Add. 31 (emphasis added).) According to Lomeli, "[t]here could be no clearer example of the use of a prior criminal record as an aggravating circumstance then computing a sentence on the United States Sentencing Guidelines." (Appellant's Br. 9.)

However, Lomeli's arguments run contrary to clearly established law in this circuit and others. We have previously held that the doctrine of specialty was not violated when a sentencing court took into account uncharged conduct when increasing a defendant's parole guideline. See Turner, 884 F.2d at 388, 390. There, we rejected the argument "that the rule of specialty . . . was intended to preclude the receiving government from taking any pre-extradition conduct into account when

-6-

making parole decisions." Id. Instead, we held that "the doctrine is generally understood to prohibit indiscriminate *prosecution* of extradited individuals rather than to prohibit the receiving state's consideration of pre-extradition offenses while prosecuting the individual for crimes for which extradition was granted." Id.

We faced an analogous situation in Thirion, 813 F.2d 146. There, a defendant was extradited from Monaco to face various criminal charges, not including conspiracy. Id. at 150 & n.4. The jury was instructed that it could find the defendant guilty of the substantive offenses based on a theory of coconspirator vicarious liability. Id. at 151. We upheld the conviction and rejected the defendant's argument that the rule of specialty barred the instruction regarding coconspirator vicarious liability, noting that because the defendant was not charged with conspiracy he "was tried only for those crimes for which he was extradited." Id. at 153. We also agreed with the Second Circuit that:

> It is clear . . . that even as the speciality doctrine has been defined and broadened in this century, it has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited.

Id. (quoting United States v. Flores, 538 F.2d 939, 944 (2d Cir. 1976)) (additional quotation omitted); see also United States v. Garcia, 208 F.3d 1258, 1261 (11th Cir. 2000), vacated on other grounds, 531 U.S. 1062 (2001) ("In the same vein, the doctrine of speciality does not control the evidentiary procedural rules of American Courts.").

As Turner and Thirion make clear, the doctrine of specialty does not operate to bar consideration of all pre-extradition conduct when determining a defendant's punishment for the extradited offense. These holdings are in line with those of our

sister circuits that have allowed nonextradited conduct to affect a defendant's sentence. See, e.g., United States v. Garrido-Santana, 360 F.3d 565, 578 (6th Cir. 2004) (doctrine of specialty not violated where sentencing court used defendant's failure to appear to enhance his sentence under USSG §3C1.1); Garcia, 208 F.3d at 1261 ("[D]efendant was not punished for crimes other than those for which he was extradited because under our law, the consideration of other conduct in the sentencing process is legally and conceptually a part of the punishment for the inducted [sic] crimes and within the limits set for those crimes."); Lazarevich, 147 F.3d at 1063-65 (doctrine of specialty not violated where the sentencing court used a foreign conviction as basis for upward departure due to understated criminal history under USSG §4A1.3(a)); United States v. Puentes, 50 F.3d 1567, 1575-76 (11th Cir. 1995) (doctrine of specialty not violated where defendant was extradited for conspiracy and government "extended the conspiratorial period for three years").

Decisions by the Supreme Court also undermine Lomeli's argument. The Court has held that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment." Witte v. United States, 515 U.S. 389, 399 (1995); see also Nichols v. United States, 511 U.S. 738, 747 (1994) ("Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction."). Lomeli's argument—that he was punished for his prior, unextradited crimes when the district court took them into account in determining his criminal history—directly conflicts with Witte and is, therefore, unavailing.

Additionally, we doubt whether Mexico intended that the district court not consider Lomeli's criminal history when it extradited him. Lomeli's standing to assert his doctrine of specialty argument is based on Mexico's ability to object to his prosecution. Turner, 884 F.2d at 389. "In determining whether the [doctrine of

specialty] has been abrogated in a given instance, the circuit courts have inquired whether the surrendering state would regard the prosecution at issue as a breach." United States v. Jetter, 722 F.2d 371, 373 (8th Cir. 1983) (per curiam) (quotation omitted); see also United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir. 1986) (per curiam) ("[T]he protection [of the doctrine] exists only to the extent that the surrendering country wishes."). Given "the long-standing practice of United States courts of considering relevant, uncharged evidence at sentencing," Lazarevich, 147 F.3d at 1064, we have some doubt whether Mexico intended the doctrine of specialty to shield Lomeli in the manner he asserts. Although Lomeli's extradition resolution purports to prohibit the United States from using Lomeli's pre-extradition conduct "even as aggravating circumstances," the resolution grounds this "commitment" in Article 17 of the U.S.-Mexico Extradition Treaty. As explained above, Article 17 does not prohibit the district court's consideration of Lomeli's criminal history when sentencing him for the extradited offenses, and we fail to see how Lomeli's extradition resolution changes that analysis.

In sum, we reject Lomeli's argument that the doctrine of specialty prohibited the district court from correctly calculating Lomeli's criminal history under the Guidelines and from using that calculation to determine his advisory Guidelines sentencing range. To hold otherwise would "permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state." Thirion, 813 F.2d at 153 (quoting Flores, 538 F.2d at 944). The plain language of the treaty prohibits the United States from punishing Lomeli for nonextradited conduct. We hold that the district court's consideration of Lomeli's criminal history did not constitute punishment for nonextradited conduct, therefore the treaty was not violated. Thus, we affirm Lomeli's 235-month sentence.

B.

Lomeli also appeals the 235-month sentence imposed by the district court. First, Lomeli argues that the district court abused its discretion by considering his

criminal history at sentencing, which Lomeli argues was an improper or irrelevant factor. Second, Lomeli argues that the district court abused its discretion in ordering that his 235-month sentence run consecutively to the undischarged portion of his 30-year Texas murder sentence.

"On appeal, we will review a sentence for an abuse of discretion, giving due deference to the district court's decision." United States v. Braggs, 511 F.3d 808, 812 (8th Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 51 (2007); Rita v. United States, 551 U.S. 338, 351 (2007)). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51. If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," and we "may . . . apply a presumption of reasonableness" to a sentence within the advisory Guidelines range. Id. A district court's decision to impose a consecutive sentence is similarly reviewed for reasonableness. See United States v. Shafer, 438 F.3d 1225, 1227 (8th Cir. 2006).

After reviewing the record, we can discern no procedural error in the court's imposition of a 235-month sentence. The district court properly calculated Lomeli's offense level and criminal history and correctly determined Lomeli's advisory Guidelines sentencing range. The court then considered the 18 U.S.C. § 3553(a) factors in arriving at the sentence it deemed appropriate, and adequately explained its reasons for sentencing Lomeli at the top of the advisory Guidelines range, citing the seriousness of Lomeli's past criminal conduct, the fact that this was his second drug-related conviction, and the fact that he is a violent and threatening person. As we explained above, it was not error for the court to consider Lomeli's criminal history as this did not violate the U.S.-Mexico Extradition Treaty.

-10-

We next turn to the question of whether the district court committed procedural error in ordering Lomeli's sentence to run consecutively to the undischarged portion of his Texas murder sentence. In his brief, Lomeli makes passing reference to an abuse of discretion by the district court. We interpret this statement as an argument that the district court failed to consider the § 3553(a) factors and to be cognizant of the elements listed in section 5G1.3 of the Guidelines. Because this argument was raised for the first time on appeal, we review for plain error. See, e.g., United States v. Starfield, 563 F.3d 673, 674 (8th Cir. 2009); United States v. Phelps, 536 F.3d 862, 865 (8th Cir. 2008), cert. denied, 129 S. Ct. 1390 (2009). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." Phelps, 536 F.3d at 865. If a defendant makes that showing, "an appellate court may exercise its discretion to correct a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

Consecutive sentences are specifically contemplated by the Sentencing Guidelines, which provide that, in cases where the defendant is subject to an undischarged term of imprisonment, "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." United States Sentencing Commission, Guidelines Manual, §5G1.3(c) (Nov. 1995)[3]; see also 18 U.S.C. § 3584(a) (authorizing a court to impose concurrent or consecutive sentences absent exceptions that do not apply here and stating that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"). In determining whether to

---

[3]The parties agreed that the 1995 edition of the United States Sentencing Guidelines Manual would apply to Lomeli's sentencing—unless using the current version of the Guidelines Manual would result in a reduced sentence—and Lomeli's PSR used the 1995 Guidelines Manual to calculate Lomeli's Guidelines sentencing range. Thus, we will also use the 1995 Guidelines Manual in determining the reasonableness of Lomeli's sentence.

impose a concurrent or consecutive sentence, the Guidelines direct the sentencing court to:

> consider the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)) and be cognizant of:
>
>> (a)    the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>>
>> (b)    the time served on the undischarged sentence and the time likely to be served before release;
>>
>> (c)    the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>>
>> (d)    any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

USSG §5G1.3, comment. (n.3).

Here, we are satisfied that the district court's discussion of the § 3553(a) factors was sufficient to comply with 18 U.S.C. § 3584 and USSG §5G1.3. Additionally, it is clear that the district court was cognizant of the details of Lomeli's Texas murder sentence, which is all that the Guidelines require. Thus, we find no plain error in the district court's decision to order a consecutive sentence and, therefore, no procedural error in Lomeli's sentence. Absent any procedural error, we "consider the substantive reasonableness of [Lomeli's] sentence . . . under an abuse-of-discretion standard," Gall, 552 U.S. at 51, and we hold that Lomeli's sentence, which was within the advisory Guidelines range, was reasonable. See United States v. Robinson, 516 F.3d 716, 717 (8th Cir. 2008) ("A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal.").

## III.

For the reasons stated above, we affirm.

_____