UNITED STATES of America,
Appellee,

v.

George CAMPBELL, also known as
Ramadan, also known as Roland
Campbell, Defendant–Appellant.

Docket No. 00–1588.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 25, 2002.

Decided: Aug. 7, 2002.

Judith Philips, Assistant United States Attorney, Brooklyn, N.Y. (Alan Vinegrad, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Brooklyn, NY, on the brief), for Appellee.

Labe M. Richman, New York, NY, for Defendant–Appellant.

Before: NEWMAN and KEARSE, Circuit Judges, and RAKOFF, District Judge.*

KEARSE, Circuit Judge.

Defendant George Campbell appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York, Raymond J. Dearie, *Judge,* following a jury verdict finding him guilty on four counts of armed

---

* Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

robbery of banks, in violation of 18 U.S.C. § 2113, three counts of armed robbery of post offices, in violation of 18 U.S.C. § 2114, one count of conspiracy to commit those offenses, in violation of 18 U.S.C. § 371, and seven counts of using and carrying a firearm while committing a crime of violence, in violation of 18 U.S.C. § 924(c). Campbell was sentenced principally to a total of 155 years' imprisonment; however, in light of an applicable extradition treaty, see Treaty between the United States and Costa Rica for the Mutual Extradition of Fugitives from Justice, Nov. 10, 1922, 43 Stat. 1621 (the "Treaty" or "Extradition Treaty"), and a condition imposed by the Costa Rican government in granting extradition of Campbell, the district court ordered the Bureau of Prisons to release Campbell after he completes an imprisonment period of 50 years. On appeal, Campbell contends principally (1) that his overall sentence violates the terms of the Costa Rican government's extradition decree, (2) that his prosecution on the firearms counts was not authorized by the Treaty or the decree, (3) that the 20–year sentences imposed on six of the firearms counts violate the principles of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and (4) that the 30–year sentences imposed on the conspiracy and substantive robbery counts exceed the statutory maxima for those offenses. Campbell also makes fair-trial, double-jeopardy, and ineffective-assistance-of-counsel challenges to his conviction. For the reasons that follow, we reject most of his contentions, affirm his conviction, and uphold the district court's ruling that sentence may be pronounced in accordance with the Sentencing Guidelines ("Guidelines") so long as it is made clear by court order that Campbell is not to be held in prison for more than 50 years. However, there are flaws in the calculation and transcription of the sentence, and we therefore vacate and remand for recalculation and the entry of a corrected judgment.

## I. BACKGROUND

In October 1991, members of a violent gang of robbers known as the "Forty Thieves" were arrested following a five-month spree of armed robberies of more than 10 banks and post offices in New York and Connecticut. Campbell, a core member of the gang, was arrested in Maryland in December 1991, but he escaped some weeks later by posing as another inmate who was scheduled for release. He remained at large while four of the gang members were convicted after a jury trial in 1993; he was finally arrested in Costa Rica in the summer of 1996.

### A. *The Extradition*

The United States submitted a formal request to the Republic of Costa Rica seeking the extradition of Campbell, also known as "Roland Lavar Campbell". The request was supported by an affidavit by Assistant United States Attorney ("AUSA") Charles W. Gerber dated June 7, 1996 ("AUSA's Affidavit"), together with, *inter alia*, a copy of the 33–count superseding indictment ("indictment"), which included 24 counts against Campbell; a copy of the warrant issued for Campbell's arrest; and the affidavit of a postal inspector describing the investigation and the evidence that led to the indictment. The AUSA's affidavit described, *inter alia*, the elements of and maximum penalties for the charges against Campbell, including the charges on which he was ultimately convicted, and it provided excerpts from the pertinent substantive and sentencing provisions of Title 18 of the United States Code.

In a decree dated October 1, 1996, the Costa Rican criminal court granted extra-

dition, except with respect to possible charges of concealment and evasion that it would deem time-barred, and imposed the condition, *inter alia*, that Campbell would not be sentenced to more than 50 years' imprisonment. As translated, the decree stated, in pertinent part, as follows:

The extradition proceedings initiated by the Government of the Republic of the United States against RONALD LAVAR CAMPBELL, a.k.a. GEORGE CAMPBELL, RAMADAN AND RONALD CUTLER are approved, subject to the following conditions: That country's representative must give a formal promise covering the following: A—That the person extradited will not be subject to life imprisonment. B—That the person extradited will not be sentenced to death. C—That a copy of the sentence, duly translated and authenticated, will be sent to this country. D—That he will not receive a sentence of more than 50 years. E—That he will not be tried for crimes different from the ones for which this extradition is granted. The extradition is not granted for the crimes of concealment and evasion, which are time barred.

Decree of Third Criminal Court of San José dated October 1, 1996 ("Extradition Decree") (quoted in Order of Costa Rican Superior Court of Criminal Cassation dated December 3, 1996 ("Court of Criminal Cassation Order"), at 1.) The Extradition Decree was in all respects confirmed on appeal by the Court of Criminal Cassation Order.

The United States Department of State, through the United States Embassy in Costa Rica, provided assurances to the Costa Rican government in a diplomatic note ("State Department Note") stating, *inter alia*, that "Campbell will not be sentenced to serve a term of imprisonment greater than 50 years." (State Depart-

ment Note.) In addition, the United States District Court for the Eastern District of New York issued an order stating the following assurances:

Should the defendant be convicted of any of the crimes charged in the pending indictment in this District, the Court, having sole discretion over the sentence to be received by the defendant, agrees that it will not sentence the defendant to a term of life imprisonment. Nor will the Court impose any sentence pursuant to which the defendant would serve a term of imprisonment of greater than fifty years.

Order dated January 24, 1997 (Denis R. Hurley, *Judge*) ("1997 Order"), at 2. Campbell was extradited to the United States in March 1997.

## B. *The Conviction and Sentence*

Following extradition, several counts against Campbell were dismissed either before or at trial. Of the remaining 17 counts, the jury found him guilty on 15 and not guilty on two. He was found guilty on one count of conspiracy to commit robberies of banks and post offices, in violation of 18 U.S.C. § 371 (count 1); four counts of armed bank robbery in violation of 18 U.S.C. § 2113 (counts 8, 14, 16, and 22), together with four counts of using and carrying a firearm in committing those bank robberies, in violation of 18 U.S.C. § 924(c) (counts 9, 15, 17, and 23); and three counts of post office robbery in violation of 18 U.S.C. § 2114 (counts 6, 10, and 12), together with three counts of using and carrying a firearm in committing those postal robberies, in violation of 18 U.S.C. § 924(c) (counts 7, 11, and 13).

Following the jury's verdict of guilty in March 1999, and prior to Campbell's sentencing, the government sought clarification of the Costa Rican government's position concerning the permissible form of

Campbell's sentence. In response, the Legal Director of the Costa Rican Ministry of Foreign Affairs Legal Department ("Costa Rican Ministry") sent the Costa Rican Consulate in Washington, D.C., a letter dated June 15, 2000 ("Costa Rican Ministry Letter"), stating, as translated, that

the guilty verdict issued in the United States against a person who was extradited from Costa Rica *may make reference to the general amount of jail time to be imposed.* However, both *the dispositive part and the explanation of purposes must establish in a clear and manifest fashion that the maximum sentence to be served is fifty years,* as provided by Article 51 of the Costa Rican Criminal Code.

(Costa Rican Ministry Letter (emphases added).) The Costa Rican Consulate forwarded that letter (in Spanish) to the United States Attorney's Office for the Eastern District of New York, with a cover letter (in English) that stated that

the verdict in the United States against an extradited person[ ] can refer to the total years that the accused can be indicted for. Nevertheless, the sentence must state, in a clear and manifest way, that the maximum time the accused must serve is 50 years. This would be the real serving time.

(Letter from Costa Rican Consul General to United States Attorney's Office dated June 16, 2000 ("Costa Rican Consul General's Letter").)

A presentence report ("PSR") was prepared on Campbell. It stated that the maximum prison term on the conspiracy count was five years and that the maximum prison term on each of the seven robbery counts was 25 years. On count 7, the first weapons charge, § 924(c)(1) required the imposition of a five-year prison term, consecutive to any other sentence imposed. The PSR stated that the convic-

tions on the remaining gun charges, counts 9, 11, 13, 15, 17, and 23, would properly be treated as second and subsequent convictions under § 924(c)(1), and thus would require 20-year prison terms each, to be served consecutively to each other and to any other sentence imposed, for a total of 120 years, *see* 18 U.S.C. § 924(c)(1) (1988 & Supp. II 1990). The PSR concluded that Campbell's total offense level was 38, that his criminal history category was IV, that the resulting prescribed Guidelines range was 360 months (30 years) to life imprisonment on the conspiracy and robbery counts, and that that range "must be imposed consecutive to Counts 7, 9, 11, 13, 15, 17, and 23 which require a total of 125 years pursuant to 18 U.S.C. § 924(c)(1)," resulting in a total of 155 years. The PSR noted, however, that "[a]s a result of the extradition treaty with Costa Rica, the defendant's sentence appears to be restricted to a maximum of fifty years."

At the sentencing hearing in July 2000, Campbell argued, *inter alia,* that the Costa Rican criminal court's specification "[t]hat he will not receive a sentence of more than 50 years" meant that the sentence the court was to pronounce could not exceed 50 years. The government argued that the letters of clarification received from the Costa Rican Ministry and the Costa Rican Consul General made it clear that a sentence of more than 50 years could be pronounced, so long as the controlling decretal provisions made clear that Campbell could not be kept in prison for more than 50 years.

The district court rejected Campbell's argument and interpreted the Extradition Decree as meaning that Campbell simply could not be required to serve more than 50 years in prison. The court concluded that the appropriate course would be "to impose the sentence as called for [by the Guidelines] and lay all the facts out."

(Sentencing Transcript July 7, 2000 ("S.Tr."), at 18.)

After hearing from Campbell himself, the court imposed sentence as follows:

> The Court sentences the defendant on Counts 1, 6, 10, 12, 8, 14, 16 and 22, to 360 months imprisonment; subject, of course, to the statutory limitations with respect to the specific counts.
>
> And on the firearm counts, which are Counts 9, 11, 13, 15, 17 and 23, to a total sentence of 125 years to run consecutively to the sentence imposed on the non-firearm counts.
>
> Did I state that correctly?
>
> MS. PHILIPS [AUSA]: Yes, your Honor.
>
> . . . .
>
> THE COURT: I intend [to] include on the judgment, and more likely than not, on the—as the government has suggested to leave nothing to chance, an appropriate order making it absolutely clear what I believe the government's obligations to be consistent with the terms of the treaty. And that will issue simultaneously, and in fact, be appended to the judgment as well.

(S.Tr.20–22.)

The concurrent sentences of 360 months (30 years) on the conspiracy and robbery counts, with a total of 125 years imposed on the firearm counts to run consecutively, resulted in a sentence of a total of 155 years imprisonment. The court appended to the judgment of conviction an order stating as follows:

> [P]ursuant to the extradition agreement between Costa Rica and the United States, and the assurances made by the United States pursuant to an Order issued by the Honorable Denis R. Hurley, United States District Judge, Eastern District of New York, on January 24, 1997, which mandate[d] that the defen-

dant serve a period of incarceration not greater than 50 years, the Court hereby orders the Bureau of Prison[s] to release the defendant after he serves a period of incarceration of 50[ ]years. Any credit, except prior custody credit, shall only affect the 155–year term and not the 50–year maximum term of incarceration as established by the extradition agreement between the United States and Costa Rica. Therefore, the defendant shall be released after he serves a period of incarceration not greater than 50 years as established by the extradition agreement between the United States and Costa Rica, with no adjustments for good conduct time, or the 155–year sentence, with adjustments for good conduct time, whichever is earlier.

Order dated July 14, 2000 ("Judgment Addendum"), at 1–2. This appeal followed.

## II.  DISCUSSION

On appeal, Campbell argues principally (1) that his conviction on the firearms charges and his overall sentence violate both the terms of the extradition treaty between the United States and Costa Rica and the Costa Rican government's grant of extradition; (2) that his 20–year sentences on six of the firearms charges violate the principles of *Apprendi;* and (3) that the 30–year sentences on the conspiracy and substantive robbery counts exceed the statutory maxima for those offenses. He also makes a variety of constitutional challenges to his conviction. For the reasons that follow, we affirm the conviction, and we see no violation of the Treaty or the Extradition Decree; but we remand for corrections in the calculation of the sentence.

A.  *Compliance With the Treaty and the Grant of Extradition*

Campbell contends that his convictions on the firearms charges should be re-

versed, and those counts of the indictment dismissed, because the Extradition Treaty does not list firearms offenses within the scope of 18 U.S.C. § 924(c) as extraditable crimes. He also contends that those charges should be dismissed because it was not made clear to the Costa Rican government that the penalties for § 924(c) convictions would be five years for the first conviction and 20 years for every other conviction, to run consecutively to each other, and thus Costa Rica did not knowingly grant the extradition request with respect to those crimes; and he contends that, in any event, his 155–year sentence violates the conditions of the grant of extradition. We reject all of these contentions.

### 1. Compliance With the Treaty

■ It is well established that, under the international principle of specialty, an extradited defendant may not be tried for a crime not enumerated in the applicable extradition treaty. *See United States v. Rauscher*, 119 U.S. 407, 424, 7 S.Ct. 234, 30 L.Ed. 425 (1886); *United States v. Flores*, 538 F.2d 939, 944 (2d Cir.1976). However, the question of whether an extradition treaty allows prosecution for a particular crime that is specified in the extradition request is a matter for the extraditing country to determine. *See Johnson v. Browne*, 205 U.S. 309, 316, 27 S.Ct. 539, 51 L.Ed. 816 (1907). In *Johnson*, in affirming the grant of a writ of habeas corpus for the release of a person who had been extradited by the Dominion of Canada for one offense but was imprisoned for a different offense that Canada had held was not an extraditable crime, the United States Supreme Court stated that "[w]hether the crime came within the provision of the treaty was a matter for the decision of the Dominion authorities, and such decision was final by the express terms of the treaty itself." *Id.* at 316, 27 S.Ct. 539. Whether or not express terms in a treaty make the extraditing country's decision final as to whether an offense is extraditable, deference to that country's decision seems essential to the maintenance of cordial international relations. It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request.

■ Thus, although courts of the United States have authority to determine whether an offense is an extraditable crime when deciding whether an accused should be extradited from the United States, *see, e.g., Shapiro v. Ferrandina*, 478 F.2d 894, 905–06 (2d Cir.1973), we interpret *Johnson v. Browne* to mean that our courts cannot second-guess another country's grant of extradition to the United States. *Accord United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir. 1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988); *McGann v. United States Board of Parole*, 488 F.2d 39, 40 (3d Cir.1973) (per curiam), *cert. denied*, 416 U.S. 958, 94 S.Ct. 1974, 40 L.Ed.2d 309 (1974); *see also Casey v. Department of State*, 980 F.2d 1472, 1476–77 (D.C.Cir.1992); *id.* at 1477 ("[A]t a minimum, *Johnson* means that an American court must give great deference to the determination of the foreign court in an extradition proceeding."). Giving the required deference, we will presume that if the extraditing country does not indicate that an offense specified in the request is excluded from the extradition grant, the extraditing country considers the offense to be a crime for which extradition is permissible.

■ In the present case, Costa Rica rendered its decision to extradite Campbell to face all of the charges set forth in

the indictment. *See* Extradition Decree. The indictment included the charges that Campbell had committed offenses in violation of § 924(c). We must infer, therefore, that Costa Rica found the § 924(c) offenses to be extraditable crimes, and we may not second-guess that decision.

### 2. *The Scope of Costa Rica's Grant of Extradition*

■ It is also well established that even if the extradition treaty explicitly lists as extraditable crimes the offenses with which a defendant is charged, prosecution on those charges is barred if the extradition request did not list those charges or if the extraditing state declined to grant extradition for those crimes. *See Johnson v. Browne*, 205 U.S. at 316–18, 27 S.Ct. 539; *United States v. Levy*, 25 F.3d 146, 159 (2d Cir.1994); *United States v. Flores*, 538 F.2d at 944; *Shapiro v. Ferrandina*, 478 F.2d at 905. This principle is reflected both in the Treaty at issue here, *see* Extradition Treaty, art. IV, 43 Stat. 1621, 1625 ("No person shall be tried for any crime or offense other than that for which he was surrendered."), and in the Costa Rican criminal court's decree granting the extradition request, *see* Extradition Decree (requiring an assurance from the United States that Campbell would "not be tried for crimes different from the ones for which this extradition is granted").

■ Although our courts have authority to determine whether a prosecution in the United States for a given crime is within the scope of the extraditing country's extradition decree, *see, e.g., United States v. Flores*, 538 F.2d at 944 (United States court may determine "whether certain offenses which the government seeks to prosecute fall outside the contemplated scope of the foreign sovereign's extradition decree"); *Fiocconi v. Attorney General*, 462 F.2d 475, 480 (2d Cir.) ("essential to determine, as best one can, whether the surrendering state would regard the prosecution at issue as a breach" of its agreement to extradite the defendant in question), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972), Campbell's contention that his prosecution on § 924(c) charges went beyond the Costa Rican government's extradition grant is meritless.

The United States government's formal extradition request to the Costa Rican government attached a copy of the indictment, which included 11 counts alleging that Campbell violated § 924(c). The supporting affidavit explicitly addressed the § 924(c) counts, *inter alia*, stating that they charged Campbell with "the use of a firearm during and in relation to a crime of violence; namely, the various armed bank and post office robberies charged in the superseding indictment" (AUSA's Affidavit ¶ 17), outlining what the government would be required to prove to establish guilt on those counts, explaining what the § 924(c) penalties were, and attaching copies of the applicable statutory and sentencing provisions. For example, the affidavit stated that

> [i]n order to convict ROLAND LAVAR CAMPBELL of the offense charged in those counts, the United States must prove at trial that he knowingly and wilfully, during an [*sic*] in relation to a crime of violence (the various robberies charged in the superseding indictment), used and carried a firearm. The penalty for a violation of Section 924(c)(1) of Title 18 United States Code is a mandatory minimum term of five years imprisonment consecutive to the sentence imposed for the crime of violence for an individual[']s first conviction, and a mandatory minimum consecutive twenty years (20) imprisonment for each subse-

quent conviction for violating the statute.

(AUSA's Affidavit ¶ 17.)

Presented with this affidavit and copies of the indictment and the statutory provisions, the Costa Rican Criminal Court granted extradition, and its decision was affirmed on appeal. We thus reject Campbell's contention that the Costa Rican government did not knowingly consent to his extradition to face § 924(c) charges carrying cumulative penalties.

### 3. *Compliance With the 50–Year Condition*

■ Campbell also contends that his 155–year sentence violated the terms of the Costa Rican government's grant of extradition, which included the condition that the United States would not sentence him to a prison term longer than 50 years. Given the record of the communications between the two nations, and the district court's judgment as a whole, we see no violation.

In the initial grant of extradition, as translated, the Costa Rican Criminal Court imposed the condition that the United States must promise that Campbell "will not receive a sentence of more than 50 years." Extradition Decree. In response to that condition, the United States Department of State promised that Campbell would "not be sentenced *to serve* a term of imprisonment greater than 50 years" (State Department Note (emphasis added)), and the United States District Court for the Eastern District of New York gave the assurance that that court would not "impose any sentence pursuant to which the defendant *would serve* a term of imprisonment of greater than fifty years" (1997 Order at 2 (emphasis added)).

In light of the possible lack of congruence between the phrases "will not receive a sentence" and will not be sentenced to "serve," the United States, following Campbell's conviction, sought clarification as to whether the judgment could permissibly announce a longer term, so long as Campbell's release was guaranteed after no more than 50 years. The Costa Rican government plainly responded in the affirmative. The Costa Rican Ministry stated that

> the guilty verdict issued in the United States against a person who was extradited from Costa Rica *may make reference to the general amount of jail time to be imposed*. However, both the dispositive part and the explanation of purposes must establish in a clear and manifest fashion that the maximum sentence to be served is fifty years, as provided by Article 51 of the Costa Rican Criminal Code.

(Costa Rican Ministry Letter (emphasis added).) We think it plain that the Costa Rican government's reference to "verdict"—given its conception of a document that would not only announce guilt but would also impose sentence—was a reference not to the jury's finding but rather to the judgment of conviction. And plainly the Costa Rican Ministry stated that so long as the dispositive part of the judgment made clear that Campbell could "serve[ ]" no more than 50 years, the judgment could permissibly make reference to the amount of jail time that would generally be applicable. Our interpretation of the Costa Rican Ministry Letter is confirmed by the language of the accompanying letter from the Costa Rican Consul General, which stated that

> [T]he verdict in the United States against an extradited person[ ] can refer to the total years that the accused can be indicted for. Nevertheless, the sentence must state, in a clear and manifest way, that the maximum time the

accused must serve is 50 years. This would be the real serving time.

(Costa Rican Consul General's Letter (emphasis added).)

In accordance with these clarifications, the district court, after announcing a sentence of 155 years, stated that in order to comply with the terms of the Extradition Decree the judgment would be clarified by an accompanying order making clear that Campbell was to serve no more than 50 years of that sentence. The court then attached to the judgment of conviction an order stating that Campbell "shall be released after he serves a period of incarceration not greater than 50 years." Judgment Addendum at 2. That order constitutes an integral part of the judgment, and it clearly and dispositively establishes that the "maximum sentence" to be served by Campbell—his "real serving time"—is 50 years. Accordingly, the sentence imposed complies with the terms of the Costa Rican government's grant of extradition.

Finally, we note that it was well within the discretion of the district court to impose its sentence in the form of a 155–year sentence with an order that exactly 50 years be served, without any diminution for, *e.g.*, good time credits, in order to ensure that Campbell would be incarcerated for the full 50 years permitted by the Extradition Decree. *See, e.g., United States v. Casamento*, 887 F.2d 1141, 1185 (2d Cir.1989) (extradition decree requiring only that "the maximum period of imprisonment may not in any event exceed 30 years" not violated by judgment "sentenc[ing the defendant] to prison for forty-five years but order[ing] that he be released after thirty years" (internal quotation marks omitted)), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

**B.** *The* Apprendi *Challenge to the 20–Year § 924(c) Sentences*

■ At the time of Campbell's offenses, § 924(c), which prohibits the use or carrying of a firearm during and in relation to a crime of violence, provided that a defendant's first § 924(c) conviction requires imposition of a prison term of five years and that "[i]n the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years." 18 U.S.C. § 924(c)(1) (1988 &·Supp. II 1990). Campbell was convicted of § 924(c) violations in counts 7, 9, 11, 13, 15, 17, and 23 of the indictment. Because it was proper to treat Campbell's conviction on count 7 as his first such conviction and his convictions on the other six counts as second or subsequent convictions under that section, *see Deal v. United States*, 508 U.S. 129, 131–32, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (first, second, and subsequent firearms convictions may be established in the same trial), the district court sentenced Campbell to 20–year terms on each of counts 9, 11, 13, 15, 17, and 23. Campbell contends that the imposition of the 20–year sentences on those six counts violated the principle announced in *Apprendi* because the status of these convictions as second or subsequent § 924 offenses was neither alleged in the indictment nor found by the jury. We disagree.

The *Apprendi* Court, though holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," stated that that requirement is applicable only to facts "[o]ther than the fact of a prior conviction." 530 U.S. at 490, 120 S.Ct. 2348. And this Court has held that the fact of a prior conviction is not an element of a § 924(c) offense. *See, e.g., United States v. Anglin*, 284 F.3d 407, 409

(2d Cir.2002) (per curiam). Thus, there was no requirement that the existence of prior convictions be alleged in the indictment or that any of the multiple firearms convictions returned by the jury be described by the jury as second or subsequent.

### C. *The Guidelines Calculations and the Statutory Maxima*

■ Campbell contends that his 30–year sentences on the conspiracy and substantive robbery counts exceed the statutory maxima for those offenses. He also complains that the PSR, relied on by the district court, misstated his adjusted and total offense levels and, independently of that error, invoked the wrong Guidelines range. These contentions have some merit. We address them in reverse order.

First, the PSR calculated that Campbell's total offense level was 38, that his criminal history category was IV (which is undisputed), and that the prescribed Guidelines range of imprisonment was therefore 360 months to life. The correct Guidelines range for that offense level and criminal history category, however, is 324 to 405 months.

Second, the government concedes that the PSR's conclusion as to Campbell's adjusted and total offense levels was also incorrect. The PSR initially calculated that his adjusted offense level was 31, the highest level for any one of his offenses. However, in an apparent clerical error, the PSR later copied the adjusted offense level figure as 33 rather than 31. This error, after the PSR's addition of five steps pursuant to Guidelines § 3D1.4 in grouping Campbell's offenses, gave him a total offense level of 38 rather than 36. The imprisonment range prescribed by the Guidelines for the correct offense level of 36, with a criminal history category IV, is 262 to 327 months.

Finally, the district court sentenced Campbell to concurrent prison terms of 360 months (30 years) on the conspiracy charge and each of the seven substantive armed robbery counts, stating that those terms were "subject, of course, to the statutory limitations with respect to the specific counts." (S.Tr.20.) The statutory maximum for conspiracy under 18 U.S.C. § 371 is five years (60 months), and the statutory maximum for each of the § 2114 postal robbery counts and the § 2113 bank robbery counts is 25 years (300 months). None of the counts of conviction carried a statutory maximum as high as 360 months.

Campbell asks us to amend the judgment to reflect concurrent 25–year sentences, rather than 30–year sentences, on the substantive robbery counts, which would reduce his overall sentence from 155 to 150 years. The government urges us instead to remand to the district court for resentencing, pointing out that under Guidelines § 5G1.2(b), the sentencing judge determines the "total punishment" to be imposed by selecting an appropriate punishment within the Guidelines range, *see, e.g., United States v. McLeod,* 251 F.3d 78, 83 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 304, 151 L.Ed.2d 226 (2001), and reasoning that it is within the court's power to sentence Campbell to up to 327 months (the top of the correct Guidelines range) by imposing concurrent sentences of 300 months on all but one robbery count, and one consecutive sentence of up to 27 months on the remaining robbery count. Given the plethora of errors in the calculation or pronouncement of Campbell's sentence, we conclude that it is preferable to remand to the district court for the imposition of a clear sentence that is correctly calculated under the Guidelines and does not exceed any statutory maximum, with the eventual sentence again accompanied by an explicit instruc-

tion that the Bureau of Prisons must release Campbell after he has served 50 years in prison.

### D. *Other Contentions*

Campbell also challenges his conviction, contending principally that he was denied effective assistance by his trial attorney, that his right to testify in his own defense was infringed, that certain of the trial court's discovery and evidentiary rulings denied him a fair trial, and, in a brief filed *pro se*, that his prosecution and conviction on multiple firearms charges violated the Double Jeopardy Clause. These contentions are meritless.

### 1. *The Performance of Counsel*

■■■■ Campbell argues that his trial counsel was ineffective in various aspects of his performance, including failing to object to the seating of a bank security guard as a juror; failing to call Campbell's brother as a witness to testify that he had "regularly" seen Campbell in Costa Rica between May and October of 1991, the period of the charged conspiracy; failing to introduce snapshots of Campbell in Costa Rica; failing to conduct an effective cross-examination of certain witnesses; and failing to object to the mention of Campbell's escape from jail. In order to establish a claim of ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonableness judged by prevailing professional norms, and (2) that but for the deficiency, there is a reasonable probability that the outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs of the test must be met in order for the defendant to prevail. Campbell has not met this test with respect to any of the challenged aspects of counsel's performance.

■■■■ Jurors are presumed to be free of bias, *see, e.g., United States v. Brown*, 644 F.2d 101, 103–05 (2d Cir.) (bank employee not presumed to be biased with respect to a prosecution for robbery of a different branch of the same bank), *cert. denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981), and Campbell has made no showing that seating the bank security guard in this case was prejudicial.

Nor did Campbell make any showing that either photographs of him in Costa Rica or his brother's testimony that Campbell was in Costa Rica at various times would have materially advanced his defense. The government did not contend that Campbell was never in Costa Rica, but simply that he was present at the robberies in the United States on the dates alleged in the indictment. Most of the testimony of whose omission Campbell complains consisted of general statements that he had been in Costa Rica, apparently without pinpointing any particular date. In only one instance has Campbell pointed to testimony that placed him in Costa Rica on a day on which he was alleged to be in the United States committing a robbery, and that testimony was in fact put in evidence.

Finally, we see no substandard performance in counsel's cross-examination of the witnesses, which was intensive with respect to matters that tended to impeach their testimony, or in his decision to forgo objection to a witness's reference to Campbell's escape from jail rather than have a parade of government witnesses testify about the escape.

### 2. *The Right To Testify*

■■■■ Campbell also contends that the district court erred in failing to find that his trial counsel rendered constitutionally

ineffective assistance by not advising him that he had a right to testify even if counsel recommended against it. It is established that "counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir.1997), *cert. denied,* 522 U.S. 1128, 118 S.Ct. 1077, 140 L.Ed.2d 135 (1998).

Here, the district court conducted a hearing at which Campbell's trial attorney testified that he had told Campbell that Campbell could testify at trial if he wished and that Campbell was "fully aware" of that right. The district court credited the attorney's testimony and discredited that of Campbell, noting that Campbell had been aggressively involved in every aspect of his case and that it would be unreasonable to conclude that he was uninformed or had suddenly become docile regarding his right to testify. Giving due deference to the court's assessments of credibility, we see no error in its conclusion that counsel did not fail to render correct advice.

### 3. *The Discovery and Evidentiary Contentions*

Campbell also contends that his right to present a defense was violated by the district court's exclusion of the deposition of Campbell's brother and its denial of Campbell's request to take additional depositions; and that he was denied a fair trial by the admission of evidence of uncharged crimes and by the court's refusal to allow Campbell to sit in the audience during in-court identifications. We see no basis for reversal.

The district court did not abuse its discretion in denying further depositions, *see, e.g., United States v. Johnpoll,* 739 F.2d 702, 708 (2d Cir.) (decisions on whether to allow depositions are within district court's discretion), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984), because Campbell did not show that the testimony of his proposed deponents was material or that the witnesses would be unavailable to testify at trial. Nor did the district court abuse its discretion in excluding the deposition of Campbell's brother, given that he attended the trial on the day the defense case began and thus could have been called to testify in person.

Nor is there merit in Campbell's challenge to the admission of uncharged crimes. Evidence of other similar crimes by a defendant is admissible under Fed. R.Evid. 404(b) to prove the identity of the defendant as the person who committed the offense being prosecuted, and the decision whether to admit or exclude such evidence is committed to the discretion of the trial court, *see, e.g., United States v. Williams,* 205 F.3d 23, 33 (2d Cir.), *cert. denied,* 531 U.S. 885, 121 S.Ct. 203, 148 L.Ed.2d 142 (2000). Campbell's fundamental position in this prosecution was that he did not participate in the robberies and that he was not "George Campbell" or "Roland Campbell" but instead was "Orlando David Campbell Allen." We see no abuse of discretion in the court's decision to admit evidence of similar crimes with which Campbell was connected in order to refute his contention that the government was now prosecuting the wrong man.

It was also well within the trial court's discretion in this case to reject Campbell's request to be seated in the audience during the in-court identifications. Although suggestive settings in the courtroom are generally to be avoided where the defendant has properly raised the issue, *see, e.g., United States v. Archibald,* 734 F.2d 938, 942–43, *modified,* 756 F.2d 223 (2d Cir.1984) (imposing conditions precedent to any requirement of special identification procedures), in the present case the court was required to weigh

the possibility of suggestiveness against the possibility that Campbell might attempt to escape. The court consulted the United States Marshals with respect to the security risks that would be posed by having Campbell mingle with the audience and concluded that those risks outweighed the danger of suggestiveness. We see no abuse of discretion in this conclusion. Campbell had a history of escape from custody. And none of the in-court identifications were to be made by persons who had had only fleeting glimpses of Campbell; rather, most of the identifying witnesses were Campbell's former coconspirators or girlfriends. The court properly balanced the competing interests.

#### 4. *The Multiple § 924 Convictions*

■ Finally, in a *pro se* brief, Campbell contends that his convictions on the firearms charges violated the Double Jeopardy Clause; his premise is that each of the separate robberies charged in the indictment were merely "predicate acts" of the conspiracy, and thus that the conspiracy is the only count that can support the firearms conviction. This contention is meritless.

■ Although only one § 924(c) violation can be appended to any single crime of violence, *see United States v. Lindsay*, 985 F.2d 666, 673–74 (2d Cir.), *cert. denied*, 510 U.S. 832, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993), a substantive offense and the conspiracy to commit that offense are separate crimes, *see, e.g., Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985). Here, Campbell was convicted not only of conspiracy but of seven substantive armed robbery offenses, plainly crimes of violence. Accordingly,

Campbell was properly convicted on seven § 924(c) counts of using and carrying a firearm in connection with those robberies.

We note also that Campbell's *pro se* brief argues that he is entitled to the benefit of a postsentencing amendment to the Guidelines that makes clear that when a defendant is convicted of both an underlying offense and a § 924(c) offense for using a firearm in connection with the underlying offense, his sentence on the underlying offense cannot be enhanced for the possession or use of a firearm. *See* Guidelines § 2K2.4 Application Note 2 (eff. Nov. 1, 2000). This amendment affords Campbell no relief, for none of the punishments imposed for the substantive robbery counts was enhanced on account of his use or possession of a firearm. And although such an enhancement was included for his conviction on the conspiracy count, there was no § 924(c) count appurtenant to the conspiracy count and that count charged as overt acts two bank robberies in addition to the robberies that resulted in convictions on the substantive counts. Hence, the firearm enhancement in connection with Campbell's conviction of conspiracy was proper, for, even as amended, the guideline commentary states that "if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction," Guidelines § 2K2.4 Application Note 2. This principle applies equally where the defendant is convicted of both armed robbery and a conspiracy to commit robberies in addition to those that resulted in convictions on substantive counts, and a § 924(c) count is not added with respect to the conspiracy count. *Cf.* Guidelines § 3D1.2(b) Application Note 4 (grouping conspiracy and substantive counts only where the substantive offense was the "sole object" of the conspiracy).

## CONCLUSION

We have considered all of Campbell's contentions on this appeal and, except as indicated above with respect to errors in the calculation of his 155–year sentence, have found them to be without merit. In addition, we note that the original judgment recited that all seven of Campbell's convictions for robbery, rather than just three, were under 18 U.S.C. § 2114, and it omitted mention of 18 U.S.C. § 2113, the section under which he was convicted on four counts of bank robbery.

The judgment of the district court is vacated. The matter is remanded for a correct calculation of the applicable Guidelines range and the imposition of a sentence that both is within that range and is not in excess of the statutory maxima, and for the entry of a corrected judgment, with the eventual sentence again accompanied by an explicit order that the Bureau of Prisons release Campbell after he has served 50 years in prison.